IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CLIFF E. KATZ, individually and on
behalf of a class of similarly
situated persons,

    Plaintiff

vs.

Healthcare Revenue Recovery
Group, LLC, d/b/a Account
Resolution Services

    Defendant

Case No. 1:22-cv-21261

/

**COMPLAINT**

NOW COMES CLIFF E. KATZ, by and through his undersigned counsel, complaining of Defendant Healthcare Revenue Recovery Group, LLC as follows:

### I. Introduction – Jurisdiction, Parties and Venue

1.  Plaintiff brings this action seeking redress for Defendant's violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et al.*, and violations of N.Y. Gen. Bus. Law § 349, *et al.*

2.  Plaintiff is a natural person, over 18-years-of-age, and is and was a resident of the State of New York during the time periods discussed herein.

3.  Plaintiff is a "consumer" as this term is defined by Section 1692a of the FDCPA because she is a natural person allegedly obligated to pay any debt arising out of a transaction where the subject of the transaction was primarily for personal, family, or household purposes.

4.  Defendant Healthcare Revenue Recovery Group, LLC ("Defendant")

1

is a limited liability company organized under the laws of the state of Florida with its principal place of business located at 1643 North Harrison Parkway, Building H, Suite 100, Sunrise, Florida 33323.

5.  Defendant specializes in the collection of medical debts[1] and is a "debt collector", as defined by § 1692a, because it regularly uses the mails and/or telephones to collect, or attempt to collect, directly or indirectly consumer delinquent debts owed or due or asserted to be owed or due another.

6.  Defendant holds a collection agency license with the New York City Department of Consumer Affairs, no. 1220946-DCA.

7.  The Court has supplemental jurisdiction over Plaintiff's state law claims and venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(2).

**II. Summary of the FDCPA**

8.  Section 1692 of the FDCPA contains "Congressional findings" and a "declaration of purpose" and states as follows:

> **(a) Abusive practices**
>
> There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.
>
> **(b) Inadequacy of laws**
>
> Existing laws and procedures for redressing these injuries are inadequate to protect consumers.
>
> **(c) Available non-abusive collection methods**
>
> Means other than misrepresentation or other

---

[1] See, https://www.healthcarerevenuerecoverygroup.com/

abusive debt collection practices are available for the effective collection of debts.

### (d) Interstate commerce

Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

### (e) Purposes

It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

*See*, 15 U.S.C. § 1692.

9. One purpose of the FDCPA was to address "the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a).

10. In enacting the FDCPA, Congress determined that "[a]busive debt collection practices contribute to" societal harms, including increasing "the number of personal bankruptcies," "marital instability," "the loss of jobs," and "invasions of individual privacy." 15 U.S.C. § 1692(a).

11. Congress determined that "[e]xisting laws … are inadequate to protect consumers" and that "[m]eans other misrepresentation or other abusive debt collection practices are available for the effective collection of debts." 15 U.S.C. §§ 1692(b)-(c).

12. The FDCPA provides that "[m]eans other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts." 15 U.S.C. § 1692(c).

13. Congress enacted the FDCPA to protect ethical debt collectors from being competitively disadvantaged by debt collectors who do not abide by the prohibitions set forth by the FDCPA. 15 U.S.C. § 1692(e).

### III. Defendant's Collection Activities Directed at Plaintiff

14. Within the past year, Defendant has attempted to collect a number of medical debts allegedly owed by Plaintiff.

15. The medical services listed on the back of the subject collection letter list service dates of 2011 and 2012 (hereafter the "Subject Debts").

16. When Plaintiff received the medical services giving rise to the Subject Debts, Medicare paid or was obligated to pay the Subject Debts.

17. Upon information and belief, as explained in Paragraph 17, Plaintiff does not owe the Subject Debts.

18. Defendant has attempted to collect the Subject Debts by causing collection letters to be mailed to Plaintiff's address in New York.

19. The date of Defendant's most recent collection letter is February 1, 2022.

20. The February 1, 2022 collection letter was and is a "communication" as this term is defined by § 1692a(2) of the FDCPA.

21. In causing the February 1, 2022 collection letter to be sent to Plaintiff, Defendant regarded Plaintiff to be a "consumer" as this terms is defined

by § 1692a(3) of the FDCPA.

22. The February 1, 2022 collection letter does not identify the date of the last payments paid toward any of the separate alleged debts that comprise the Subject Debts.

23. The February 1, 2022 collection letter did not inform Plaintiff whether the Subject Debts are time-barred and subject to a statute of limitations.

24. The February 1, 2022 collection letter warned Plaintiff as follows: "[a]s required by law, you are hereby notified that a negative credit report may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligation."

25. No portion of the FDCPA required Defendant to include the above quoted language.

26. When Plaintiff read the February 1, 2022 collection letter, he did not know that the Subject Debts are too old to be credit reported.

27. Plaintiff has paid $300 to pay down one of the medical bills that forms a portion of the Subject Debts.

28. Plaintiff would not have paid $300 toward the Subject Debt if he had been told (in writing or verbally) that the Subject Debts was time barred.

29. When Plaintiff paid these funds, he did not know that the Subject Debts were past the applicable statute of limitations.

30. Upon information and belief, in prior communications with Plaintiff, Defendant did not inform Plaintiff that the Subject Debts were time-barred and subject to a statute of limitations.

31. Plaintiff would not have attempted to pay funds to pay off or more of the debts which comprise the Subject Debts if he knew that one or all of Subject Debts were time-barred at the time he made the $300 payment.

32. When Plaintiff read the February 1, 2022 collection letter, he thought that the Subject Debts were time-barred. Because Plaintiff was worried and concerned about the collection of such an old debt, he obtained a credit report and incurred time, effort and costs in doing so. The specific debts listed on the February 1, 2022 collection letter are not reporting on Plaintiff's credit reports.

33. When Plaintiff called Defendant to obtain an accounting of his prior payment, he was told that Defendant would not send him any confirming paperwork.

34. On information and belief, it appears that Defendant may have allocated Plaintiff's prior payment of $300 to cause the funds to apply across the board to all of the debts to restart or revive the applicable statute of limitations which was six (6) years, until recently amended to three (3) years by the State of New York's Consumer Credit Fairness Act (S.153/A.2382).

35. Upon information and belief, Defendant has acted in a similar manner with more than forty (40) other consumers in the State of New York and this judicial district by and through its collection activities.

**COUNT I –Violations of Section 1692e of the FDCPA**

36. Plaintiff incorporates Paragraphs 1-35 as if fully set forth:

37. The date of Defendant's most recent collection letter is February 1,

2022.

38. The February 1, 2022 collection letter and the above described facts and circumstances violate Section 1692e of the FDCPA where Section 1692e prohibits debt collectors from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt."

39. The February 1, 2022 collection letter and the above described facts and circumstances violate Section 1692e(2)(A) of the FDCPA where Section 1692e(2)(A) prohibits he false representation of — (A)the character, amount, or legal status of any debt[.]"

40. The February 1, 2022 collection letter and the above described facts and circumstances violate Section 1692e(5) of the FDCPA where Section 1692e(5) prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken."

41. The February 1, 2022 collection letter and the above described facts and circumstances violate Section 1692e(8) of the FDCPA where Section 1692e(8) prohibits "threatening to communicate to any person credit information which is known or which should be known to be false[.]"

42. The February 1, 2022 collection letter and the above described facts and circumstances violate Section 1692e(10) of the FDCPA where Section 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt."

WHEREFORE, Plaintiff requests the following relief:

    a. declaring that Defendant violated Sections 1692e, 1692e(2), 1692e(5) and 1692e(10) of the FDCPA;

    c. an award of actual damages sustained by Plaintiff as a result of Defendant's violation(s);

    c. an award of statutory damages to Plaintiff; and

    d. costs and reasonable attorney's fees incurred by Plaintiff.

## COUNT II –Violations of Section 1692f of the FDCPA

43. Plaintiff incorporates Paragraphs 1-35 as if fully set forth:

44. The February 1, 2022 collection letter and the above described facts and circumstances violate Section 1692f of the FDCPA where Section 1692f prohibits debt collectors from "us[ing] collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

WHEREFORE, Plaintiff requests the following relief:

    a. declaring that Defendant violated Sections 1692f of the FDCPA;

    c. an award of actual damages sustained by Plaintiff as a result of Defendant's violation(s);

    c. an award of statutory damages to Plaintiff; and

    d. costs and reasonable attorney's fees incurred by Plaintiff.

## COUNT III –Violations of Section 1692c(b) of the FDCPA

45. Plaintiff incorporates Paragraphs 1-22 as if fully set forth:

46. On information and belief, the February 1, 2022 collection letter was sent by a third-party letter vendor.

47. Section 1692c(b) of the FDCPA states as follows:

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection

with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C § 1692c(b) (emphasis supplied).

48. Section 1692b of the FDCPA provides as follows:

Any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall—
(1) identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer;
(2) not state that such consumer owes any debt;
(3) not communicate with any such person more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information;
(4 ) not communicate by post card;
(5) not use any language or symbol on any envelope or in the contents of any communication effected by the mails or telegram that indicates that the debt collector is in the debt collection business or that the communication relates to the collection of a debt; and
(6) after the debt collector knows the consumer is represented by an attorney with regard to the subject debt and has knowledge of, or can readily ascertain, such attorney's name and address, not communicate with any person other than that attorney, unless the attorney fails to respond within a reasonable period of time to communication from the debt collector.

15 U.S.C. § 1692b.

49. Section 1692b relates to the manner in which a debt collector may lawfully communicate "with any person *other than the consumer* for the purpose of acquiring location information." 15 U.S.C. § 1692b (emphasis supplied).

50. Defendant has violated Section 1692c(b) by transmitting Plaintiff's personal contact information and the existence of the subject medical related debt (including the amount of the debt) (hereafter "Plaintiff's Personal Information") to a third-party vendor.

51. Defendant's use of a third-party vendor led to Defendant transmitting Plaintiff's Personal Information to the third-party vendor without Plaintiff's express person.

52. The third-party vendor received Plaintiff's Personal Information and inputted Plaintiff's Personal Information into a template letter provided by Defendant.

53. Plaintiff did not provide Defendant with permission to send his Personal Information and is status as an alleged letter to Defendant's third-party letter vendor.

54. The FDCPA's statutory findings explicitly identify "invasions of individual privacy" as one of the harms against which the statute is directed. 15 U.S.C. § 1692(a).

55. The use of third-party letters is problematic because of data breaches involving confidential medical information.

56. For example, a Chicago based healthcare system ("Rush System for Health") reported in 2019 that confidential patient data has been compromised

in a data breach. See, https://www.modernhealthcare.com/technology/rush-data-breach-exposes-45000-patients

57. According to the healthcare provider's quarterly report dated February 12, 2019, the data breach involved one of the healthcare provider's so-called "third party claims processing vendors":

> On January 22, 2019, Rush learned that an employee of one of its third-party claims processing vendors improperly disclosed a file containing certain patient information to an unauthorized party. Based on Rush's internal investigation and review, we believe this file included certain personal information, such as name, address, Social Security number, date of birth, and health insurance information, relating to approximately 45,000 Rush patients. No medical history or treatment information was part of the file. After learning of the incident, Rush launched an internal investigation and suspended the contract with the claims processing vendor. The cause of this incident was not internal to Rush but due to an external party. Rush has taken steps relative to its vendors to help prevent this type of incident from happening in the future.

See https://emma.msrb.org/ER1197288-ER937224-ER1338270.pdf at p. 28.

58. The data breach discussed above was not limited to Rush System for Health.

59. The data breach discussed above involved MiraMed Global Services, a third-party vendor that was assisting the healthcare provider recoup outstanding bills and the data breach involved other healthcare providers. See, https://www.hipaajournal.com/emerson-hospital-breach-claims-processing-vendor/

60. The data breach discussed above is not an isolated situation. Other examples are detailed at https://www.hipaajournal.com/category/hipaa-

breach-news/page/4/

61. As set forth above, Defendant violated Section 1692c(b) of the FDCPA by using a third-party letter vendor to send collection letters to Plaintiff.

62. Plaintiff has suffered actual damages as a result of Defendant's conduct and is also entitled to statutory damages.

WHEREFORE, Plaintiff requests the following relief:

a. declaring that Defendant violated Section 1692b(c) of the FDCPA;

c. an award of actual damages sustained by Plaintiff as a result of Defendant's violation(s);

c. an award of statutory damages to Plaintiff;

d. costs and reasonable attorney's fees incurred by Plaintiff.

**COUNT IV –Violations of  N.Y. Gen. Bus. Law § 349**

63. Plaintiff incorporates Paragraphs 1-35 as if fully set forth:

64. N.Y. Gen. Bus. Law § 349(a) prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state …."

65. The February 1, 2022 collection letter and the above described facts and circumstances constitute deceptive acts and/or practices in violation of § 349(a).

66. Upon information and belief, Defendant has acted in a similar manner with more than forty (40) other consumers. Accordingly, "Defendant's conduct is part of a pattern directed at the public generally." *M&T Mortg. Corp. v. Miller*, No. 02-CV-5410, 2007 WL 3534781, at *2 (E.D. N.Y. Nov. 13, 2007)

(internal quotation marks and citation omitted).

67. An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." N.Y. Gen. Bus. Law § 349(h).

68. An individual so injured may also be awarded treble damages and punitive damages.

69. Defendant's wrongful and deceptive acts caused injury and damages to Plaintiff.

70. Defendant's conduct evidences a high degree of moral culpability, is so flagrant as to transcend mere carelessness, constitutes willful or wanton negligence and/or recklessness sufficient to justify a punitive damages award.

71. As a direct and proximate result of Defendants' violations of N.Y. Gen. Bus. Law § 349, Plaintiff suffered compensable harm and is entitled to preliminary and permanent injunctive relief, and to recover actual, treble, and punitive damages, together with costs and attorneys' fees

WHEREFORE, Plaintiff requests the following relief:

a. declaring that Defendant violated N.Y. Gen. Bus. Law § 349(a);
b. an award of actual damages sustained by Plaintiff as a result of Defendant's violation(s);
c. an award of $50.00 in statutory damages to Plaintiff;
d. an award of treble damages and punitive to Plaintiff; and
e. costs and reasonable attorney's fees incurred by Plaintiff.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury.

Dated: 4/22/2022

*/s/ Alexander J. Taylor*
Alexander J. Taylor, Esq.
Florida Bar No. 1013947
Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200
Lombard, IL 60148
Telephone: (630) 575-8181
ataylor@sulaimanlaw.com
*Counsel for Plaintiff*